**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **EUNICE ELAINE CURRY** | : | |
| | : | |
| **v.** | : | **CIVIL ACTION NO. 21-18** |
| | : | |
| **DEVEREUX FOUNDATION** | : | |

---

**McHUGH, J.**                                                                        **May 24, 2021**

**MEMORANDUM**

      This is an action under 42 U.S.C. § 1981 claiming race discrimination and retaliation, brought by a longtime employee twice passed over for promotion.  At the core of the case is the alleged use of a racial stereotype—the "angry Black woman"—and the significance it should carry in weighing whether conduct was racially motivated and whether the plaintiff has stated a claim of retaliation.  In considering this issue, the destructive power of this particular label is significant, in part due to the degree in which it can inhibit Black women from asserting their rights.  That point is underscored by this case, where the defense argues in part that the retaliation claim fails because Plaintiff's response to the racial discrimination alleged was not sufficiently oppositional.  In the related context of gender-based discrimination, the Supreme Court has decried the "intolerable and impermissible catch-22," which puts women "out of a job if they behave aggressively and out of a job if they do not."  *Price Waterhouse v. Hopkins,* 490 U.S. 228, 251 (1989).  Their reasoning applies with equal force here.  Further development of the record is warranted, with the result that Defendant's motion to dismiss will be denied.

## I.    <u>Factual Allegations</u>

      Plaintiff Eunice Elaine Curry, a Black woman, worked as a program supervisor in Defendant Devereux Foundation's Brook Program for thirteen years.  *See* Compl. ¶¶ 7, 17, ECF No. 1.  In early February 2020, Defendant's Assistant Executive Director, Daniel Eichelberger,

announced that Devereux had openings for one Campus Administrator position, one Program Director position, and three Program Manager positions. *Id.* ¶ 8. Plaintiff applied for the open Program Director and Program Manager roles. *Id.* ¶ 9. She was interviewed for the Program Director post on February 14, 2020. *Id.* ¶ 10.

On March 2, 2020, while Ms. Curry awaited the results of her application for the Program Director position, Defendant announced that Byron Lee, a White man, had been promoted to Campus Administrator. *Id.* ¶ 11. Eight days later, Defendant informed Ms. Curry that she had not been selected as Program Director, and Plaintiff reiterated her interest in the Program Manager role, which remained unfilled. *Id.* ¶ 12. This specific position was designed to serve the Brook Program, where Ms. Curry had worked for 13 years. *Id.* ¶¶ 9, 17.

Following her rejection from the Program Director role, Plaintiff sought professional advice and feedback on her performance as an employee from Mr. Eichelberger, a White man, on March 25, 2020. *See id.* ¶¶ 8, 13. During the hour-long meeting, Curry and Eichelberger discussed the difficulties Ms. Curry was experiencing in working with her new supervisor, Byron Lee. *Id* ¶ 13. As Plaintiff was leaving the meeting, Eichelberger commented that "People are afraid of the angry Black woman." *Id.* Ms. Curry replied, "I am not an angry Black woman." *Id.* Eichelberger responded, "but you have been angry." *Id.* ¶ 13. Plaintiff viewed this statement as "racially offensive and derogatory." *Id.* ¶ 19.

On April 27, 2020, Ms. Curry participated in a telephone interview for the Program Manager position with Byron Lee and Brian Wood. *Id*. ¶ 15. On May 7, 2020, Mr. Lee informed Plaintiff that she had not been selected for the position, which was one of three such roles advertised by Defendant. *Id.* ¶ 17. Defendant had previously hired a White woman for one of the three Program Manager positions. *Id.* ¶ 14. Plaintiff sought a meeting with Lee to discuss why

she had not been promoted despite having worked for the Brook Program for thirteen years. *Id.* ¶ 19. She reports that, during a May 21, 2020 meeting, Lee was "evasive" and "failed to provide any direct feedback." *Id.* At one point ,Mr. Lee purportedly stated, "I do not know if there is an answer." *Id.*

During this meeting, Curry also told Lee about the "angry Black woman" comment that Eichelberger had made during their March 25ᵗʰ meeting. *Id.* Plaintiff requested a subsequent conversation with Lee regarding Eichelberger's statement, and the pair met on June 9, 2020. *Id.* ¶¶ 20–21. Around two weeks later, Defendant's Human Resources Department contacted Ms. Curry regarding the statement. *Id.* ¶ 22. Plaintiff proceeded to file complaints regarding Eichelberger's comment and met with Human Resources three times in July. *Id.* ¶¶ 23–25. She claims that "no resolution of her complaints was reached." *Id.* ¶ 25.

Finally, in September 2020, Ms. Curry met once more with Human Resources and observed that she still lacked an explanation for why she had been denied the Program Director and the Program Manager jobs. *Id.* ¶ 26. Patrick Girdner, the Director of Human Resources, stated that he was part of the interview panel and had received feedback that Ms. Curry was "conflictual" and "something about teamwork." *Id.* Plaintiff claims that the only explanation that Defendant has offered to date for failing to promote her was Lee's note that "we were looking for a cohesive team." *Id.* ¶ 27.

This suit followed. Defendant has moved to dismiss several of Plaintiff's claims, but the sole issue that remains unresolved is Plaintiff's claim for retaliation.[1] *See* Def.'s Mot. Dismiss, ECF No. 7.

---

[1] Defendant has not challenged Plaintiff's disparate treatment claim under § 1981. It moves to dismiss what it perceives to be a claim for harassment in the workplace, but Ms. Curry subsequently clarified that she is not pursuing a hostile work environment claim. ECF 10, p. 1. Plaintiff has withdrawn her claim for intentional infliction of emotional distress. *Id.,* p. 2, n.2.

## II.   Standard of Review

Within the Third Circuit, motions to dismiss under Fed. R. Civ. P. 12(b)(6) are governed by the well-established standard set forth in *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009).

## III.   Discussion

The Supreme Court has established that § 1981 protects individuals against retaliation. *See CBOCS West, Inc. v. Humphries,* 553 U.S. 442, 451 (2008).  To maintain a retaliation claim under § 1981, Plaintiff must show that "(1) [s]he engaged in protected activity, (2) [her] employer took an adverse action against h[er], and (3) there was a causal connection between [her] participation in the protected activity and the adverse employment action." *Estate of Oliva ex rel. McHugh v. New Jersey,* 604 F.3d 788, 798 (3d Cir. 2010).  The elements of a § 1981 employment discrimination claim are identical to those brought under Title VII.  *See Schurr v. Resorts Int'l Hotel, Inc.*, 196 F.3d 486, 499 (3d Cir. 1999).

Plaintiff broadly contends that Defendant Devereux Foundation engaged in unlawful retaliation when it refused to promote her to two separate positions: Program Director and Program Manager.  *See* Compl. ¶¶ 29, 35.  I will grant Defendant's motion with respect to the Program Director role, because Ms. Curry fails to plead facts indicating that she engaged in any protected activity before being notified she had not been selected for that position.  As to Plaintiff's claim of retaliation arising out of her protest after she did not secure the Program Manager role, she has adequately alleged that she objected to Eichelberger's usage of a racial stereotype.  Furthermore, his involvement in the hiring and promotion process is unknown at this point.  I will therefore deny Defendant's motion in part for the following reasons.

A. The Requirement of Adverse Action

Defendant's refusal to promote Ms. Curry constitutes an adverse employment action. The relevant inquiry is whether the alleged action "well might have dissuaded a reasonable worker from making or supporting a charge of discrimination." *Burlington N. & Sante Fe Ry. Co. v. White*, 548 U.S. 53, 68 (2006); *Estate of Olivia ex rel. McHugh*. 604 F.3d at 798 (applying Title VII standard to § 1981 case). When an individual is denied promotion, they are deprived of additional income and may also experience the anxiety that accompanies professional stagnation. Ms. Curry claims that she experienced significant financial losses and plausibly alleges emotional distress, having been passed over for promotion in the program where she had worked for thirteen years. *See* Compl. ¶¶ 19, 39. It is not difficult to conceive how the prospect of a diminished professional future would dissuade a worker from complaining about discrimination, and several courts within the Third Circuit have held that denials of promotion can comprise adverse actions. *See Hightower v. Eastern Area Sch. Dist.*, 818 F. Supp. 2d 860, 886 (E.D. Pa. 2011) (addressing repeated failures to promote as adverse action); *Kocher v. Municipality of Kingston*, 400 F. Supp. 3d 138, 153 (M.D. Pa. 2019) (finding that failing to promote plaintiff to detective is an adverse employment action); *Rodriguez v. Torres*, 60 F. Supp. 2d 334, 352 (D.N.J. 1999) (permitting plaintiff to proceed on retaliatory failure-to-promote claim).

B. The Requirement of Protected Activity

Ms. Curry must also demonstrate that she engaged in protected activity. *See Estate of Oliva ex rel. McHugh,* 604 F.3d at 798 (requiring protected activity, adverse action, and causation in retaliation cases). Her complaint raises two possible instances of oppositional conduct: 1) her March 25, 2020 refusal to assent to Eichelberger's comment that "People are afraid of the angry Black woman," Compl. ¶ 13, and 2) her May 21, 2020 report to Lee regarding the "racially

offensive and derogatory statement." *Id.* ¶ 19.[2]  As noted above, there was no protected activity alleged before Plaintiff was denied the Program Director role on March 20, 2020.  And as to the Program Manager job,  only Plaintiff's March 25th protest against the use of a racial stereotype is relevant, as her May complaint to Lee occurred after she was rejected for the position.

In cases brought under Title VII,  the Third Circuit has held that "a plaintiff establishes a retaliation claim if she shows that she had a reasonable belief that her employer was engaged in an unlawful employment practice and that the employer retaliated against her for protesting against that practice."  *Drinkwater v. Union Carbide Corp.*, 904 F.2d 853, 865 (3d Cir. 1990).  It appears to follow the same standard in § 1981 cases.  *See Castleberry v. STI Group*, 863 F.3d 259, 267 (3d Cir. 2017) (stating that the plaintiff "must have acted under a good faith, reasonable belief that a violation existed" under § 1981) (internal citations omitted).  The question is whether Ms. Curry was lodging a protest  against what she reasonably believed was discriminatory behavior.  Although the issue is in some ways a close one, I find that Ms. Curry's conduct suffices as protected activity, as it is plausible that she reasonably believed Defendant was engaging in disparate treatment and she explicitly challenged the application of a racial stereotype.

---

[2] In Plaintiff's response in opposition to Defendant's motion to dismiss, she claims, for the first time, that "shortly after the March 25, 2020 meeting and prior to May 7, 2020, Ms. Curry complained to Cory McLaurin, a Program Supervisor, about the racially derogatory statement made by Mr. Eichelberger." Pl's. Resp. Opp'n 3, ECF No. 10.  "[I]t is axiomatic that the complaint may not be amended by the briefs in opposition to a motion to dismiss."  *Com. of Pa. ex rel. Zimmerman v. PepsiCo, Inc.*, 836 F.2d 173, 181 (3d Cir. 1988) (quoting *Car Carriers, Inc. v. Ford Motor Co.*, 745 F.2d 1101, 1107 (7th Cir.1984)). For this reason, I will not consider this additional allegation in evaluating Defendant's motion. Should Plaintiff seek to add this contention to her Complaint, she must seek leave to amend under Fed. R. Civ. P. 15(a)(2).

1. Plaintiff Reasonably Believed Defendant Violated § 1981

Defendant argues that Plaintiff could not reasonably believe that Eichelberger's statement "People are afraid of the angry Black woman" constituted a discriminatory employment practice. Def.'s Reply 3, ECF No. 11. But it crafts its argument under the standard for establishing a hostile work environment, arguing that a single comment could not be reasonably viewed as "severe or pervasive." *Castleberry*, 863 F.3d at 267. If Plaintiff were proceeding under such a theory, this argument would carry weight. But Defendant misses the point.

Plaintiff has clarified that her claim is not based on the existence of a hostile work environment but is instead rooted in the theory that racial stereotypes—namely, the "angry Black woman" trope—unlawfully played a part in Defendant's promotion and hiring decisions. Other district courts have addressed the perniciousness of this stereotype. In *Young v. Control Solutions, LLC*, No. 15-cv-3162, 2017 WL 2633679, at *4 (N.D Ill. Jun. 19, 2017), the court observed:

> Angry and its synonyms are, standing alone, innocent words with no racial connotation. They are words, however, with a long history as part of a stereotypical depiction of black women that can trace its roots to the institution of slavery. Although the parties offer limited evidence on this point, there appears to be an academic consensus regarding both the resilience of this stereotype within American society and its continued detrimental impact upon black women. When a word or concept is so pervasively and enduringly linked to a derogatory stereotype, its use to reference individuals traditionally subject to the stereotype inherently raises the specter of motivation or bias.

Similarly, in *Heard v. Board of Trustees of Jackson Community College*, No. 11–13051, 2013 WL 142115, at *12 (E.D. Mich. Jan. 11, 2013), the court quoted the following description offered by cultural historians:

> [T]he Angry Black Woman (ABW) popularized in the cinema and on television … is tart-tongued and emasculating, one hand on a hip and the other pointing and jabbing (or arms akimbo), violently and rhythmically rocking her head .... She is a shrill nagger with irrational states of anger and indignation and is often mean-spirited and abusive ... [S]he has venom for anyone who insults or disrespects her.[3]

---

[3] Ferris State University, Jim Crow Museum of Racist Memorabilia (2012), https://www.ferris.edu/HTMLS/news/jimcrow/antiblack/sapphire.htm.

This caricature can conceivably affect conduct: when Black women engage in assertive or forceful behavior, their conduct is tagged as threatening or deviant, even when it would be tolerated in an employee of a different gender or race. Out of a desire to avoid this stereotype, Black women may adopt a passive attitude that impairs their chances for advancement or renders them unable to object to discrimination. In this respect, Black women experience the same "intolerable and impermissible catch-22" described by the Supreme Court in *Price Waterhouse v. Hopkins*: "out of a job if they behave aggressively and out of a job if they do not." 490 U.S. at 251. For this reason, courts have held that the invocation of the "Angry Black Woman" stereotype may serve as evidence of discriminatory animus. *See, e.g.*, *Robinson v. City of Atlanta*, No. 10-2036, 2010 WL 11440788, at *7 (N.D. Ga. Dec. 21, 2010) (holding that "angry black woman" comments support a claim for discriminatory discharge based on race and sex).

The more difficult question is whether Eichelberger's alleged use of this term reasonably suggested that his employer, Devereux Foundation, was engaging in unlawful disparate treatment. Stereotypical comments, while falling short of actionable harassment, may serve as evidence that race motivated a particular employment decision. *See Price Waterhouse,* 490 U.S. at 251. *See also Brown v. J. Katz, Inc.*, 581 F.3d. 175, 181–183 (3d Cir. 2009) (permitting claim where the plaintiff alleged that a decision-maker process directed racist statements towards the plaintiff). At this stage, I must "construe the complaint in the light most favorable to the plaintiff, and determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief." *Phillips v. County of Allegheny*, 515 F.3d 224, 233 (3d Cir. 2008). Plaintiff has alleged that Mr. Eichelberger served as Defendant's Assistant Executive Director and that he announced the posting of the open roles on February 3, 2020. *See* Compl. ¶ 8. Eichelberger purportedly used the term "angry Black woman" during a professional counseling meeting, implicitly suggesting that

Ms. Curry would need to conform her conduct to racialized expectations to succeed at the Foundation. *Id.* ¶ 13. And finally, Mr. Eichelberger is alleged to have said that "People are afraid of the angry Black woman," imputing his views to a larger, albeit unknown, group. *Id.* Plaintiff's complaint, therefore, raises questions with respect to Eichelberger's role in the hiring process and whether his alleged statement more broadly reflected a culture of discrimination at the organization. Discovery will be necessary to ascertain whether Plaintiff reasonably believed that the Devereux Foundation was engaging in unlawful disparate treatment.

### 2. Plaintiff Engaged in Sufficient Oppositional Conduct

In addition to demonstrating a reasonable belief that discrimination was occurring, Ms. Curry must also show that she opposed her employer's discriminatory practice. *See Curay–Cramer v. Ursuline Acad. of Wilmington, Del., Inc.,* 450 F.3d 130, 134 (3d Cir. 2006). Opposition need not be significant or formal. Rather, the Third Circuit has directed courts to focus on the "message being conveyed rather than the means of conveyance." *Moore v. City of Philadelphia,* 461 F.3d 331, 343 (3d Cir. 2006). *See also Crawford v. Metropolitan Government of Nashville & Davidson County,* 555 U.S. 271, 277 (2009) (observing that the term "opposition" may be used in reference to "someone who has taken no action at all to advance a position beyond disclosing it"). However, "opposition to an illegal employment practice must identify the employer and the practice—if not specifically, at least by context." *Curay*, 450 F.3d at 135–136 (signing name to pro-abortion advertisement was not protected activity as one could not reasonably conclude that the action was taken in response to an employer's alleged illegal policy or practice); *Barber v. CSX Distribution Servs.*, 68 F.3d 694, 702 (3d Cir. 1995) (rejecting claim where plaintiff expressed his dissatisfaction with promotion decisions but did not specifically complain about age discrimination).

Although this is once again a close issue, I find that Ms. Curry's rejection of the "angry Black woman" stereotype sufficiently conveyed her opposition to a discriminatory practice. After Eichelberger, Defendant's Assistant Executive Director, purportedly declared that "People are afraid of the angry Black woman," Plaintiff then disputed that assessment, stating that "I am not an angry Black woman." Compl. ¶ 13. The context in which this conversation took place is significant, as Eichelberger is alleged to have used this term during a career counseling meeting where Plaintiff had previously expressed her frustrations with the hiring manager for the open Program Manager position. *Id.* ¶¶ 13,15. When the facts are viewed in the light most favorable to Plaintiff, Ms. Curry objected to the usage of a discriminatory stereotype in evaluating her qualifications for promotion. This further highlights the unique dilemma faced by Black women subjected to this trope. Defendant contends that Plaintiff's protest was legally insufficient, but had Plaintiff objected more virulently to the comments alleged, describing them as "racist" or "discriminatory," she would run the risk of confirming the stereotype she wished to disavow. In settings such as this, courts must exercise extreme caution at the pleading stage, so as not to impose unrealistic requirements. I therefore conclude that Plaintiff's rejection of Eichelberger's statement constitutes sufficient oppositional conduct.

C.  The Requirement of Causation

Finally, Ms. Curry must also show a causal connection between the protected activity and adverse action. The Third Circuit has also clarified that plaintiffs bringing retaliation claims have a lesser burden at the *prima facie* stage of the case. *See Carvalho-Grevious v. Delaware State University*, 851 F.3d 249, 258 (3d Cir. 2017). A plaintiff does not need to prove "but for" causation at the *prima facie* stage; rather, the question is whether the plaintiff has "produced evidence from which a reasonable factfinder could conclude that her engagement in a protected activity was

the *likely reason* for the adverse employment action." *Id.* at 259. Plaintiffs may produce a wide array of evidence to demonstrate the causal link: an employer's inconsistent explanation, a pattern of antagonism, or temporal proximity unusually suggestive of retaliatory motive. *Id.* at 260. Alternatively, the evidence may, when taken as a whole, suffice to raise the inference. *Id.*

Plaintiff has pleaded that she engaged in protected activity but that she was denied the program manager position one month later. Because Mr. Eichelberger's role in the hiring process is unknown, it is unclear whether Ms. Curry's objection to the "angry Black woman" stereotype influenced Defendant's hiring decision. I am also cognizant of the fact that individuals involved in the selection process received feedback from an unknown source that Plaintiff was "conflictual," and that Bryon Lee, Plaintiff's supervisor, expressed concerns she would not work well as part of a "cohesive team." Compl. ¶¶ 26, 27. Additional discovery is necessary to rule out retaliation as the causal factor for Ms. Curry's non-selection to the role.

IV. **Conclusion**

For the reasons set forth above, Defendant's Motion to Dismiss Plaintiff's Complaint will be granted in part and denied in part. An appropriate order follows.

      /s/ Gerald Austin McHugh
    United States District Judge